JOSEPH FORWARD *et al. versus* The HAMPSHIRE and
HAMPDEN CANAL COMPANY *et al.*

A bill in equity set forth, that prior to 1827, a canal was located through a pond and a dam was constructed by the canal company, whereby water was diverted from the plaintiffs' mill ; that the location of the canal was confirmed in the same year by the county commissioners ; that in 1834, the canal company having become insolvent, its franchise was sold according to law, to one H, for the term of 999 years, for the payment of its debts ; that at a meeting of the county commissioners in September, 1836, the report of certain commissioners appointed under the act incorporating the canal company, by which the sum of $ 1416 was awarded to the plaintiffs for their damages, was accepted by the county commissioners, and ordered to be recorded ; that the canal company, and H, although he was apprized of the foregoing facts, had both refused to pay such sum ; that on the 9th of April, 1836, in pursuance of an arrangement entered into between the canal company and H, and certain other persons, an act was passed by the legislature, whereby such company were authorized to transfer their franchise and property to a new corporation, consisting of H and others, upon certain conditions therein specified ; that the only provision made by such act for satisfying any claims for damages sustained by the acts of the old company, was the privilege of receiving the amount of such claims in stock of the new company at a price which was much greater than it was worth; that the old company transferred their franchise and property accordingly ; and that the new company had refused to make any compensation to the plaintiffs, except by offering to them the privilege before mentioned. It was *held*, that the plaintiffs were not entitled to relief in equity as against H or either of the two corporations ; and that if they ever had any claim in equity, they had lost it by their own laches.

THIS was a bill in equity against the Hampshire and Hampden Canal Company, the New Haven and Northampton Company, and Samuel Hinckley. The bill sets forth, that long before January 1, 1827, and ever since, the plaintiffs were and have been the owners of water privileges and mills in Southwick, which were supplied with water by Two Mile brook, the outlet of Southwick ponds ; that prior to that day the Hampshire and Hampden Canal Company, acting under their charter, entered upon the land adjoining to the plaintiffs' works, and proceeded to locate their canal through the most northerly of the ponds, and to erect a dam across the outlet of the same, in order to secure and use the water of the ponds for the purpose of supplying the canal ; that such location was confirmed by the county commissioners of Hampshire, on the 24th of April, 1827 ; that by the erection of such dam. the water that used to flow in the brook had been almost entirely diverted

therefrom, and the mill sites and works had been rendered of little or no value ; that the plaintiffs instituted proceedings for the assessment of the damages, in the manner provided by the act incorporating such company; that at a meeting of the county commissioners in September, 1836, the report of the canal commissioners, awarding to the plaintiffs the sum of $1416, for the damages sustained by them, was accepted by the county commissioners, and ordered to be recorded ; that the company had refused to pay the same ; that the plaintiffs were utterly unable to obtain any redress or compensation for the injury sustained by them, inasmuch as long before the acceptance of the report the company had become deeply insolvent, and on the 3d of October, 1834, its franchise was sold, according to law, for the sum of $3000, to Hinckley, for the term of 999 years, for the payment of its debts ; that the reversionary interest of the company therein was therefore of no value whatever, and the company had no other property or means whereby the claims of the plaintiffs could be satisfied ; that Hinckley refuses to make any allowance or payment to the plaintiffs on this account, although fully apprized of the facts before mentioned ; that afterwards, on the 9th of April, 1836, and, as the plaintiffs are informed and believe, in pursuance of an arrangement entered into between the company and Hinckley and others, an act was passed by the legislature, whereby the company were authorized to transfer their franchise and all their property to a new corporation, to be called the New Haven and Northampton Company, consisting of Hinckley and other persons, upon certain conditions and terms therein specified ; that the only provision made by such act for the satisfying of any claims for damages already sustained by reason of the acts of the Hampshire and Hampden Canal Company, is the privilege of receiving the amount of such claims in stock of the New Haven and Northampton Company, at a price fixed by such act, which is much greater than the sum for which the stock can be sold or is worth, such stock being of very little value ; that, afterwards, the Hampshire and Hampden Canal Company, as the plaintiffs were informed and believed, in pursuance of the provisions of the last mentioned statute, transferred their franchise and all their property to the New Haven and Northamp-

ton Company, but when and upon what terms, the plaintiffs are unable to state ; that the New Haven and Northampton Company have refused to make any compensation to the plaintiffs, except by offering to them the privilege of subscribing to the stock of such company the amount of damages awarded to them, in the manner before mentioned.

The plaintiffs further aver, that by these acts of the defendants, the plaintiffs' property has been taken from them without their consent, and appropriated to an alleged public use without their recovering or being able to obtain a reasonable compensation therefor, contrary to the express provisions of the constitution of this Commonwealth, and against those principles of equity and right, which are recognized as fundamental by all wise and just governments.

The prayer of the bill is, that Hinckley and the two companies, or some of them, may be decreed to make to the plaintiffs full satisfaction for the several injuries by them sustained, and in the mean time, be required to remove the dam ; that if the defendants shall refuse to make such compensation to the plaintiffs within some reasonable time to be designated by the Court, a perpetual injunction may issue against the further maintenance of the dam, and the defendants be decreed to make meet compensation to the plaintiffs for the injuries already sustained by them by reason of the premises ; and that the plaintiffs may have such other and further relief as they shall be found entitled to, in law and equity.

The defendants demurred.

Sept. 28th,
1838
*Forbes* and *Boise*, for the defendants, cited to the point, that if the plaintiffs would set up an equitable claim as against Hinckley, it was incumbent on them to aver and prove clearly, that notice of such claim was given to him before the sale of the franchise, 2 Story on Eq. 318 ; and to the point, that if the plaintiffs ever had any claim in equity, they had lost it by their own neglect and laches, *Lansing* v. *Eddy*, 1 Johns. Ch. R. 49 ; *Barker* v. *Elkins*, 1 Johns. Ch. R. 465 ; *Smith* v. *Lowry*, 1 Johns. Ch. R. 320 ; *Dodge* v. *Strong*, 2 Johns. Ch. R. 228 ; *Steiger* v. *Hillen*, 5 Gill & Johns. 121 ; *Drewry* v. *Barnes*, 3 Russell's Ch. R. 94 ; *M'Neil* v. *Magee*, 5 Mason, 244.

*Wells* and *Alvord,* for the plaintiffs.

Forward
*v.*
Hampshire
&c.
Canal Co.
*April term*
1839,
*in Hampden.*

PUTNAM J. delivered the opinion of the Court. The Hampshire and Hampden Canal Company was incorporated sixteen years ago, by *St.* 1822, *c.* 59 ; and by the 8th section ample provision is made for the recovery of damages by all persons &c. who may sustain any, " by the opening of such canal or any of its branches or feeders through his, her or their land, or by the construction of any reservoirs, embankments, tow-paths, basins, wharves, or other appendages, or by the diversion of the water from any of the ponds, rivers, or streams," over and above the advantages which the commissioners (who are to be sworn) shall adjudge may accrue to such person or persons, corporation or corporations, from the opening of the canal. The parties have severally a right to have the damages assessed by a jury, if the adjudication of the commissioners should not be deemed to be satisfactory. The party injured may have an action of debt against the corporation to recover the damages, if not paid in ninety days after the commencement of the process of excavation, &c. And there is a provision, that any person or persons whose water privileges shall be injuriously affected by the construction of the canal, and who shall not have exhibited his or their claims for damages at the time therein before provided, may make application to the Court of Sessions in the county of Hampshire, who shall proceed to have the damages of such applicant ascertained.

It appears from the plaintiffs' statement in their bill, that they instituted proceedings for this purpose before the county commissioners of Hampshire in September, 1836, and that the sum of $ 1416 was awarded to the plaintiffs as damages, which sum the plaintiffs aver has not been paid.

It appears from the bill, that so long ago as April, 1827, the canal company built a dam across the outlet of a pond, and diverted the water which otherwise would have run to the plaintiffs' mills ; that long before the plaintiffs obtained the report ascertaining their damages, the canal company had become deeply insolvent and unable to pay their debts ; that the franchise of the corporation had been sold *according to law,* to Hinckley, for the term of 999 years, for the payment of its debts ; and that the reversionary interest is of no value. And the

plaintiffs say, that the company has no other property or means to pay these damages. They say further, that Hinckley will not pay the claims of the plaintiffs. And it seems to us that they do not show any reason why he should. They acknowledge that he has bought the franchise for 999 years, according to law. They say it was sold to pay the debts of the compa ny. The plaintiffs lay by and did not present their claims for damages until long after that transaction, and after Hinckley had gone into possession and made arrangements with another company for the better carrying on the business of the canal, without notice of any claim on the part of the plaintiffs. That arrangement was made in April, 1836, by the statute of 1836, *c.* 199, entitled, an Act to incorporate the New Haven and Northampton Company.

The plaintiffs proceed to state, that the company last mentioned became the grantees of the Hampshire and Hampden Canal Company, and of all their property, which was the reversionary interest expectant after 999 years, and which the plaintiffs, in their bill, declare to be of no value. And the plaintiffs complain, that the New Haven and Northampton Company refuse to pay their claims. We really cannot perceive any reason why they should. That arrangement was almost a forlorn and desperate struggle. The preamble of the act recites the deep insolvency and inability of the old corporation to " sustain the canal and meet the demands of their creditors." But it proceeds to provide the ways and means of raising a cash subscription to the amount of $135,000, to carry the work forward ; and for the subscription of the creditors of the first company, of their demands, upon terms prescribed, when the same should be liquidated, if on the whole a compliance with those terms should be considered as beneficial to the creditors.

Now the Hampshire and Hampden Canal Company were authorized by the legislature to construct the canal. It is not to be treated and considered as a nuisance. For the relief of the first company, as well as for the compensating of the damages to be sustained by individuals, a remedy was provided by statute, which was supposed by the legislature to be ample. To those remedies were persons, who sustained damages, to

resort. But the plaintiffs neglected to pursue them, according to their own account of the matter, until after all the means of the company to make payment had been exhausted. The franchise was sold for the long term of years, for the honest purpose of paying the debts of the corporation, so far as the proceeds or consideration would go ; and the assignees of the reversion, the confessedly worthless reversion, are now called upon to pay as if they took the estate subjected to the debts due from the first company, or as if there existed a perpetual lien upon the same in favor of the creditors. And the Court is now called upon to issue a perpetual injunction against the keeping up of the dam, as if it were a nuisance, or as if the damages were to have been paid as a condition precedent before the corporation were authorized to commence the work, and as if the respondents were wrongdoers from the beginning.

But the Court cannot think that the plaintiffs have shown any legal or equitable ground whereon their claim can rest.

The plaintiffs' complaint is subject to two infirmities ; first, that it discloses no equity ; and secondly, that if they ever had any, they have lost it by their own laches.

*Bill be dismissed, with costs for the respondents.*

Forward<br>v.<br>Hampshire<br>&c.<br>Canal Co